UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

LAWRENCE BROWN,

Defendant.

14-CR-00509

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Defendant Lawrence Brown was charged in a four count indictment with having committed two Hobbs Act Robberies, in violation of 18 USC § 1951, and with brandishing a firearm during crimes of violence, in violation of 18 USC § 924(c). Defendant was accused of committing two separate robberies; one on November 14, 2013 at a Rite Aid Pharmacy ("Rite Aid Robbery") and one on April 4, 2014 at a Shop Rite Supermarket ("Shop Rite Robbery"). In May 2016, Defendant moved to suppress, *inter alia*, identification evidence ("Defendant's Suppression Motion"). By Opinion and Order dated September 19, 2016, this Court denied that portion of Defendant's Suppression Motion which sought to suppress the photo array identification evidence. Following a jury trial, Defendant was convicted of all four counts of the indictment.

Now before the Court is Defendant's post-trial motion pursuant to Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure, for an Order setting aside the jury verdict and entering an order of acquittal, or in the alternative, granting a new trial ("Defendant's Motion"). For the following reasons, Defendant's Motion is DENIED in its entirety.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/8/2017

**LEGAL STANDARD**

Rule 29 Motion

Rule 29 provides that after the close of the Government's evidence in a criminal trial, on the defendant's motion, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. § 29(a). The rule permits a defendant to move for a judgment of acquittal within fourteen (14) days of a guilty verdict or the Court's discharge of the jury, whichever is later.[1] Fed. R. Crim. P. § 29(c)(1). On such a motion, the Court must enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Fed. R. Crim. P. 29(a),(c); *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citing *United States v. Reyes*, 302 F.3d 48, 52 (2d Cir.2002)). This standard imposes a heavy burden on the defendant, as a conviction must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

When assessing the sufficiency of the evidence, the Court must view the evidence in the light most favorable to the government and draw all reasonable inferences in its favor. *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir.1991). The Court must consider direct evidence as well as any circumstantial evidence proffered. *See United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995) (citing *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993), *cert. denied*, 510 U.S. 976 (1993)). In so doing, the Court must view the evidence in its totality, not in isolation, and note that the government is not required to negate every possible theory of innocence. *See United States v. Rosenthal*, 9 F.3d 1016, 1024 (2d Cir.1993). Most importantly, the Court must be ever mindful not to "usurp[e] the role of the jury," *United States v. Espaillet*, 380 F.3d 713, 718

---

[1] The Government does not challenge the timeliness of the motion.

(2d Cir. 2004) (citing *Jackson*, 335 F.3d at 180), nor may it "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Id.* at 718 (citing *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999)) (internal quotation marks omitted).

Rule 33

On a Rule 33 motion, "the court may vacate any judgment and order a new trial if the interest of justice so requires." Fed. R. Crim. P. § 33. Rule 33 motions are typically granted "only in extraordinary circumstances." *United States v. Moore*, 54 F.3d 92, 99 (2d Cir. 1995); *see also United States v. Torres*, 128 F.3d 38, 48 (2d Cir.1997); *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). The Rule 33 time limitations are jurisdictional; unless a motion is filed in a timely fashion, a court lacks the power to consider it. *United States v. Spencer*, 83 F. App'x 391, 393 (2d Cir. 2003) (citing *United States v. Dukes*, 727 F.2d 34, 38 (2d Cir. 1984)). While Rule 33 "confers broad discretion upon a trial court," the granting of the motion must be predicated upon the Court's need to avoid a perceived miscarriage of justice. *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). It is axiomatic that trial courts "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. LeRoy*, 687 F.2d 610, 616 (2d Cir. 1982), *cert. denied*, 459 U.S. 1174 (1983). Only where exceptional circumstances exist may the trial judge intrude upon the jury function of credibility assessment. *See United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). For example, where testimony is deemed "patently incredible or defies physical realities," the Court may reject such evidence despite the jury's evaluation. *See e.g.*, *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (quoting *Sanchez*, 969 F.2d at 1414); *Holland v. Allied Structural Steel Co.*, 539 F.2d 476, 483 (5th Cir. 1976), *cert. denied*, 429 U.S. 1105 (1977); *Zollman v. Symington Wayne Corp.*, 438 F.2d

28, 31-32 (7th Cir. 1971), *cert. denied*, 404 U.S. 827 (1971). The "ultimate test" for the Court's consideration is "whether letting a guilty verdict stand would be a manifest injustice [such that] . . . . an innocent person may have been convicted." *Ferguson*, 246 F.3d at 133 (citation and quotation marks omitted); *see also United States v. Aponte-Vega*, 230 F.3d 522, 525 (2d Cir. 2000) (per curiam).

**DISCUSSION**

Upon viewing the evidence in the light most favorable to the Government, and taking into consideration the totality of the evidence, it is this Court's determination that the Government has proffered sufficient evidence to establish each of the requisite elements of the crimes charged, such that a rational trier of fact would or could determine beyond a reasonable doubt that the Defendant committed both the Rite Aid Robbery and the Shop Rite Robbery.

Defendant does not challenge the sufficiency of the evidence concerning the factual elements of the crimes charged. In fact, Defendant concedes "that the Government established the [necessary factual elements of the] robberies beyond a reasonable doubt." (Defendant's Brief in Support of Motion Pursuant to Rules 29(a) and 33, ECF No. 59, "Def. Br." at 2.) Defendant's sole contention is that the Government failed to establish beyond a reasonable doubt the identity of the perpetrator. (*Id.*) In other words, Defendant asserts that the Government failed to establish beyond a reasonable doubt that it was he who committed both robberies. This Court disagrees.

Rite Aid Robbery

Defendant contends that there was insufficient evidence placing him at the site of the Rite Aid Robbery. (Def. Br. at 2.) Such contention lacks merit. At trial, Stephanie Solis, a cashier of the Rite Aid Pharmacy located in New Windsor, New York, testified that on November 14, 2013, a tall male dressed as a Pepsi delivery employee ("perpetrator") entered the location and asked to

4

speak to the store manager. After directing the perpetrator to Kerensa Howard ("Howard"), the store manager, Solis observed the perpetrator and the manager briefly talk and then enter the manager's office. A short time thereafter, Solis observed the perpetrator exit the manager's office carrying a blue Aldi bag with a tree on it (later determined to contain money) and then leave the store. Several minutes later Solis heard Howard calling out for her. She quickly entered the manager's office where she observed Howard on the ground with her hands and feet tied with plastic zip ties.

Howard testified that on November 14, 2013, she was approached by a male wearing a Pepsi employee uniform ("perpetrator"). After speaking with him, she proceeded to her office. Just as she opened the door to her office, the perpetrator placed a hard object against her side and pushed her into the office. Once inside the office, the perpetrator displayed what appeared to be a handgun, ordered her to open the safes, remove all of the money, and place the money in a blue bag[2] he was carrying, tied her hands and feet, and ordered her to the ground. While she was on the ground, the perpetrator left the office.

Though the Defendant is correct that neither Solis nor Howard was ever asked and did not identify him as the Rite Aid Robbery perpetrator, (*see* Def. Br. at 3), the Government proffered other evidence placing Defendant at the scene. Specifically, the Government proffered multiple store surveillance videos of the incident which, when viewed in the light most favorable to the Government, showed the Defendant dressed in a Pepsi employee uniform brandishing what appears to be a handgun. (Government Exhibit, "GX" 30-36.) The video not only captured Defendant's conduct upon entering Rite Aid, but also captured his actions while in the manager's office and as he exited the store carrying a bag. (*Id.*)

---

[2] Like Solis, Howard testified the bag which Defendant presented had a picture of a "tree on it."

The Government also proffered DNA evidence recovered from the zip ties used to restrain Howard. (GX 11-16.) A forensic expert, Urfan Mukhtar ("Mukhtar") testified that the zip ties recovered from the Rite Aid Robbery and used by the perpetrator to tie up Howard were analyzed and found to contain traces of DNA. Upon further analysis, it was determined that the recovered DNA matched that of the Defendant. Defendant's argument that this "conclusion is patently absurd" is unavailing. (Def. Br. at 3.) Mukhtar's testimony acknowledged that multiple individuals (aside from just the Defendant) touched the zip ties that were recovered. Nevertheless, he explained that it is not unusual that items purportedly touched or handled by multiple people do not contain DNA samples from everyone who handled such items. The Court notes that although Mukhtar was cross-examined, the testimony concerning DNA remained uncontradicted. Thus, the Government proffered evidence which not only placed the Defendant in the Rite Aid Pharmacy but also supports a finding that the Defendant handled the zip ties used to restrain Howard during the commission of the crime.

Defendant's attempts to undermine or minimize the weight to be accorded to and relevancy of the Government's proffered evidence is of no moment. As previously referenced by the Court, the proffered evidence must be viewed in its totality, not in isolation. *Rosenthal*, 9 F.3d at 1024. This Court is required to not only consider direct evidence, but must consider circumstantial evidence as well. *Martinez*, 54 F.3d at 1046. Lastly, it is paramount that the Court be ever vigilant not to supplant the jury's role in making credibility determinations, the weight to be accorded evidence, and reasonable inferences to be drawn. *Epaillet*, 380 F.3d at 718. Accordingly, the jury's determination with respect to the Rite Aid Robbery is supported by the evidence and should not be set aside.

Shop Rite Robbery

Defendant also calls into question the sufficiency of evidence presented with respect to the Shop Rite Robbery. Defendant contends that the in-court identification by an eyewitness of him as the perpetrator was "fabricated" because the witness previously observed a "photo array [which] contained a photograph of Mr. Brown which was so suggestive as to virtually eliminate all the other photos from consideration." (Def. Br. at 4.) Such contention is without merit.

Defendant's argument is simply a veiled attempt to re-litigate his Suppression Motion. By Opinion and Order dated September 9, 2016, this Court denied Defendant's Suppression Motion, thereby permitting the Government to use the photo array as evidence against Defendant. (ECF No. 33.) The Court determined then that Defendant's bare bone allegations failed to make the necessary showing that the identification procedure - photo array - was unduly suggestive and was thus insufficient to raise the existence of a disputed issue of fact warranting a pretrial hearing concerning the reliability of the identification.[3] (*Id.*)

At trial, the Government called Dennis Adams ("Adams") as a witness.[4] Adams testified that on April 14, 2014 while working as an assistant store manager at a Shop Rite supermarket in Newburg, New York, he received a call over the public address system to report to the manager's office. As he proceeded to ascend a short flight of steps leading to the manager's office, he was accosted by the perpetrator who was wearing a knit hat and holding a black handgun.

While in the manager's office area,[5] the perpetrator ordered Adams to empty the store safe and place the cash inside a blue bag which the perpetrator presented. Once the store cash was

---

[3] By Notice of Motion, dated February 26, 2017, Defendant moved for re-consideration of the Court's Opinion and Order. (ECF No. 48.) Defendant's motion for re-consideration was also denied. (ECF No. 53.)
[4] Adams testified following a grant of immunity from the Government, (ECF No. 55), for an unrelated charge of possession of narcotics for personal use.
[5] The manager's office area includes the counting room where the store safe is located.

7

placed in the perpetrator's bag, Adams was forced to lay on the ground with his legs and hands tied behind his back by an electrical cord. Adams also testified that he observed at least two other store employees laying on the manager's office floor with their legs bound, hands tied behind their backs by plastic zip ties, and clothing items over their heads.

Of significance to the instant motion, Adams identified the Defendant in court as the perpetrator of the robbery and as depicted in the surveillance video. Adams also testified that sometime after the Shop Rite Robbery, law enforcement agents came to his workplace and showed him a photo array of six individuals and asked him whether he recognized any of the individuals in the photographs. Adams identified the Defendant's photograph as the perpetrator who committed the robbery and testified that such election was based on some of the Defendant's distinctive facial features, including his nose.

The Government also proffered the testimony of Zachary Hamilton ("Hamilton"), an employee of Shop Rite. Hamilton testified that on April 14, 2014, he was working as an employee at the Shop Rite supermarket in Newburg, New York. As he entered the counting room near the manager's office he encountered an individual wearing a knit hat, yellow button down shirt, and khaki pants who was holding a handgun. Hamilton observed that the handgun was a revolver because he "saw the bullets in the cylinder" of the gun.[6] Once inside the counting room, the Defendant ordered him to open the safe. Since Hamilton was unable to do so, the Defendant ordered him to walk up a short flight of steps toward the manager's office where the Defendant tied Hamilton's hands behind his back with zip ties. After his hands were tied, Hamilton was taken into the manager's office where he observed a co-worker, Arthur Case, sitting on a chair sobbing. Inside the manager's office, the Defendant ordered Hamilton to page a manager who would have

---

[6] Hamilton testified that he was familiar with guns because his father and uncle were pistol permit holders and "we've had guns in my house my whole life."

8

access to the safe. Sometime thereafter, a third employee, Jason Rodriguez, was also brought into the manager's office and tied up.

Further, the Government proffered store surveillance video of the robbery. (GX 40-44.) The videos capture, *inter alia*, the Defendant's interaction with Adams in and about the manager's office. They also depict the Defendant holding a handgun and directing Adams to open the store safe, remove the cash from the safe, and place it in a "blue bag" presented by the Defendant. (*Id.*) This evidence is compelling.

Overall, Defendant's contention raises issues of credibility. On a Rule 29 motion, however, the Court must defer to the jury the right to make credibility determinations, weigh the evidence, and draw justifiable inferences of fact. *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984); *see also United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). Adams' testimony that he spent considerable time with the Defendant such that he was not only able to identify him out of a photo array but was also able to recollect several facial features and make an unequivocal in-court identification is clearly sufficient to demonstrate that the Defendant committed the Shop Rite Robbery. The jury's apparent determination that he was credible and that the Defendant was the perpetrator of the Shop Rite Robbery shall not be upended.

Further fortifying this Court's decision to leave the jury's verdict in tact is the Government's presentation of modus operandi evidence. During closing arguments, and again during the opposition to the instant motion, the Government argued that there were striking similarities in the manner in which each robbery was committed. (Government's Brief in Opposition to Defendant's Motion, ECF No. 63, "Gov't Br." at 10.) These similarities included the perpetrator's appearance, gait, use of a blue bag, the use of zip ties or other material to bind the hands and feet of the witnesses, and the brandishing of a black handgun. This evidence,

viewed "in totality" with the other evidence presented by the Government likely assisted the jury in determining that the Defendant was in fact the perpetrator of both robberies. Consequently, a "rational trier of fact could have found the essential elements beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.

18 U.S.C. § 924 Charges

Lastly, Defendant challenges the sufficiency of the evidence supporting the two separate convictions for violations of 18 U.S.C. § 924(c). The statute criminalizes the use or carrying of a firearm during and in relation to any violent crime, or possession of a firearm in furtherance of such a crime. 18 U.S.C. § 924(c). It is well settled that robbery is a crime of violence for purposes of 18 U.S.C. § 924(c). *See United States v. Dreizler*, 78 F. App'x 734 (2d Cir. 2003); *United States v. Steele*, 390 F. App'x 6 (2d Cir. 2010); *United States v. Rivera*, 571 F. App'x 55 (2d Cir. 2014). Additionally, the statute provides that use of a firearm includes the brandishing of a firearm. 18 U.S.C. § 924(c)(1)(A)(ii). The term "brandish," requires the firearm be displayed in such a manner "in order to intimidate" another person. 18 U.S.C. § 924(c)(4). The actual handgun need not be recovered for the government to meet its burden of proof that a firearm was used. See *United States v. Jones*, 16 F.3d 487, 489 (2d Cir. 1994). Eyewitness testimony is sufficient so long as it provides a rational basis for the jury to find that the object observed "was, in fact, a firearm." *Id.* (citing *United States v. Castillo*, 924 F.2d 1227, 1230 (2d Cir. 1991) (testimonial evidence sufficient to prove that unrecovered gun was "firearm" where witness was a police officer who had "extensive training and familiarity in the identification and use of firearms")); *see also Parker*

*v. United States*, 801 F.2d 1382, 1384 (D.C. Cir.1986), *cert. denied*, 479 U.S. 1070 (1987), (eyewitness testimony need not come from firearms expert to sustain § 924(c) charge).

In the Rite Aid Robbery, Howard testified that the perpetrator placed a hard object against her side and pushed her into the office. Once inside the office, Howard observed the perpetrator holding a black handgun.[7] Threatened by the display of the handgun, Howard followed the perpetrator's demands and emptied the store safes of all the money. The surveillance video of the incident also showed the perpetrator holding a firearm. The testimonial evidence, coupled with the video, more than suffices to meet the Government's burden of proof that the firearm was displayed "in order to intimate." 18 U.S.C. § 912(c)(4).

In the Shop Rite Robbery, Adams testified that the defendant pointed a handgun and ordered him to remove all the cash from the safe. Hamilton testified that a perpetrator, identified by Adams as being the Defendant, was holding a handgun; a determination he based on his familiarity with and past exposure to firearms. He further testified that the Defendant held the gun and ordered him into the counting room, clearly indicating that the gun was used to intimate. Hamilton observed that the handgun was a revolver, not a pistol, because he "saw the bullets in the cylinder" of the gun. The surveillance video also showed the Defendant holding a handgun. Such evidence is likewise sufficient to sustain the Government's burden.

## CONCLUSION

For the foregoing reasons, Defendants' Motion pursuant to Rule 29 to set aside the jury verdict and issue a trial court order of dismissal, or in the alternative, directing a new trial, is

---

[7] Rule 701 of the Federal Rules of Evidence provides that, where a witness is not testifying as an expert, the witness's testimony in the form of an opinion or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. The burden is on the party wishing to introduce lay opinion testimony to establish the proper foundation. *See United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002). The testimony by Howard that the object she saw was a handgun was properly admitted at trial and clearly constitutes her rationally based perception.

DENIED. Defendant failed to meet its burden of demonstrating that, based on the evidence presented at trial, "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." Fed. R. Crim. P. 29(a),(c); *Jackson*, 335 F.3d at 180 (citing *Reyes*, 302 F.3d at 52).

Defendant's Motion pursuant to Rule 33 is also DENIED. Defendant failed to demonstrate that a new trial was warranted in the interest of justice.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 59 and to place this matter on the calendar for January 12, 2018 at 12:15 pm for sentencing.

This constitutes the Court Opinion and Order.

Dated: November 8, 2017
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge