```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/20/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

LAWRENCE BROWN,

                         Defendant.

No. 14 Cr. 509 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant Lawrence Brown was convicted of two counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951 and two counts of brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii) following a jury trial. On January 12, 2018, the Court sentenced Defendant to a term of 468 months' imprisonment followed by 3 years of supervised release. Defendant appealed the judgment. On August 16, 2019, the Second Circuit affirmed the judgment but still remanded the case for re-sentencing. On November 6, 2019, the Court re-sentenced Defendant to a term of 303 months to be followed by 3 years of supervised release. On July 26, 2021, the Second Circuit affirmed Defendant's sentence, but modified the sentence to a term of 300 months' imprisonment. Defendant's projected release date is October 5, 2036.

On or about October 17, 2022, Defendant moved *pro se* for a reduction of sentence pursuant to 18 U.S.C. 3582(c)(1)(A). ("Def. Mem.," ECF No. 100.) On November 15, 2022, the Government filed an opposition to Defendant's motion. ("Gov. Opp.," ECF No. 102.) On or about April 3, 2023, Defendant filed his Reply. ("Def. Reply," ECF No. 108.) For the reasons that follow, the Court denies Defendant's motion.

## LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), courts may modify or reduce a defendant's term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the

defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If the exhaustion requirement is met, a court "may [then] reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission defined the term "extraordinary and compelling reasons" at U.S.S.G. § 1b1.13, comment n.11. *United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020) (citing *United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4-5 (S.D.N.Y. Jan. 8, 2020)). In determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that a defendant presents to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 238 (quoting 28 U.S.C. § 994(t)).

As the proponent of release, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *Ebbers*, 2020 WL 91399, at *4.

**BACKGROUND**

Defendant was indicted on two counts of Hobbs Act Robbery, 18 U.S.C. § 1951(b)(1) (Counts One and Three) and two counts of brandishing a firearm, 18 U.S.C. 924(c)(1)(A)(ii) (Counts Two and Four). A four-day jury trial was conducted in March 2017, and the jury returned a guilty verdict on all counts. On January 12, 2018, the Court sentenced Defendant to 84 months' imprisonment on Counts One and Three, to be served concurrently; 84 months' imprisonment on Count Two, to be served consecutively; and 300 months' imprisonment on Count Four, to be served consecutively. The sentence, totaling 468 months, was within the applicable guidelines range.

Defendant appealed. On appeal, the Second Circuit remanded the case for re-sentencing because it was unsure whether the Court considered *Dean v. United States*, 137 S. Ct. 1170 (2017) in determining Defendant's sentence.[1] (ECF No. 82.) During the pendency of the appeal, Congress passed the First Step Act of 2018, which amended 18 U.S.C. § 924(c)(1)(C) to remove the 300-month mandatory minimum consecutive sentence for a second Section 924(c) conviction.

The Court conducted a re-sentencing hearing on November 6, 2019. The Court ruled the First Step Act applied to the Defendant and re-sentenced him to a total of 303 months' imprisonment—87 months' imprisonment on Counts One and Three for Hobbs Act Robbery, to run concurrently, and 108 months' imprisonment each on Counts Two and Four for brandishing a firearm, to run consecutively.

Defendant again appealed his sentence. The Second Circuit modified the concurrent 87-months sentence for the Hobbs Act Robberies to 84 months,[2] reducing Defendant's sentence from

---

[1] *Dean* permits sentencing judges to consider the severity of mandatory consecutive minimum sentences required by 18 U.S.C. § 924(c) in determining sentences for underlying predicate offenses.
[2] The Second Circuit found the Court's failure to explain the increase from 84 months in the original sentence to 87 months in the amended sentence procedural error.

303 months to 300 months. (ECF No. 99.) The Second Circuit otherwise found no substantive error with the Court's sentence.

As of the date of this Opinion & Order, Defendant has served approximately 113 months of his 300-month sentence, or approximately 44%. He is currently incarcerated at Fort Dix, Federal Correctional Institution. His projected release date is October 5, 2036.

On or about June 17, 2022, Defendant petitioned the warden at Ray Brook, Federal Correctional Institution ("FCI Ray Brook") for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). On July 11, 2022, the warden denied Defendant's request. On October 17, 2022, Defendant filed the instant motion for compassionate release before this Court.

## DISCUSSION

### I. Appointment of Counsel

Defendant requests appointment of counsel. (Def. Mem. at 3.) Generally, a defendant "has no right to the assistance of counsel in filing a motion for compassionate release." *United States v. Broadnax*, No. 15 Cr. 878, 2023 WL 6533489, at *1 (S.D.N.Y. Oct. 6, 2023) (quoting *United States v. Fleming*, 5 F.4th 189, 193 (2d Cir. 2021)). "A defendant's constitutional right to counsel 'extends to the first appeal of right, and no further.'" *United States v. Diaz*, No. 16 Cr. 719, 2022 WL 3020145, at *4 (S.D.N.Y. July 28, 2022) (quoting *Fleming*, 5 F.4th at 193). While a defendant's right to counsel "may extend to certain 'ancillary matters,' 18 U.S.C. § 3006A(c), such matters do not include 'collateral attacks upon a judgment' like that afforded by" the compassionate release statute. *Id.* (quoting *Fleming*, 5 F.4th at 193).

Thus, "[f]or a compassionate release motion, . . . it is within the district court's discretion whether to appoint counsel." *Broadnax*, 2023 WL 6533489, at *1. In exercising that discretion, a district court may consider whether the defendant's compassionate release motion would likely be

4

successful. *See United States v. Piña*, No. 01 Cr. 619, 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021) ("The Court finds that appointment of counsel is unwarranted here because [the defendant's] chances of success on his proposed motion for compassionate release are 'extremely slim.'") (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))).

Defendant seeks appointment of counsel because (1) he cannot afford adequate counsel; (2) is "unskilled and unversed in the application of federal law" and cannot "articulate" a response to the Government's opposition papers; and (3) he does not have access to the law library for legal research. (Def. Mem. at 3.) As discussed above, Defendant has no right to counsel when moving for compassionate release or a reduction of sentence. Moreover, as discussed further below, Defendant has presented no argument or evidence to suggest that his motion may be successful if he had counsel. Accordingly, Defendant's request for an attorney in connection with his compassionate release motion is denied.

## II. Extraordinary and Compelling Circumstances

Defendant offers four reasons that purportedly constitute extraordinary and compelling circumstances under § 3582(c)(1)(A) and warrant a sentence reduction: (1) his stacked Section 924(c) convictions; (2) his extreme risk of infection from the COVID-19 and/or Mpox viruses due to the conditions at the facility; (3) his post-traumatic stress disorder ("PTSD") and other mental health issues; and (4) his family circumstances, including the need to care for his disabled wife and two young daughters. (Def. Mem. at 7-14.) Defendant asks the Court to reduce his sentence to "home confinement, with GPS monitoring." (Def. Mem. at 17.) In opposition, the Government argues that none of the reasons Defendant proffers rise to the level of "extraordinary and compelling" warranting release under Section 3582(c)(1)(A)(i). (Gov. Opp. at 3–4.) After due consideration, the Court agrees with the Government.

5

### A.  Stacking of the Section 924(c) Convictions

Defendant argues that Section 924(c)'s "stacking provision"—which required a 7-year minimum sentence for any first offense and a 25-year mandatory minimum sentence for any subsequent conviction—constitutes an extraordinary and compelling reason for a sentence reduction. (Def. Mem. at 7-9.) However, as the Government observes, Defendant's sentence of 300 months is <u>not</u> the result of Section 924(c)'s stacking provision. Defendant received the benefit of the First Step Act—which removed mandatory consecutive sentences for multiple firearms convictions—during his re-sentencing on November 6, 2019. Defendant is currently sentenced to 300 months' imprisonment—85 months for the Hobbs Act Robbery charges, to be served concurrently, and 108 months for each firearms offense, to be served consecutively. This sentence is much lower than Defendant's original sentence of 468 months—which included the 300-month mandatory minimum for the second firearms offense—that he received prior to the passage of the First Step Act. Accordingly, Defendant's convictions are not "stacked" pursuant to Section 924(c), and therefore his consecutive sentences are not extraordinary and compelling reasons for a reduced sentence.

### B.  COVID-19 and Mental Health Issues

The Sentencing Guidelines provide "that 'extraordinary and compelling' reasons include, the '[m]edical [c]onditon of the [d]efendant' if the defendant is 'suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *United States v. Sims*, No. 19CR857NSR01, 2022 WL 3013111, at *1 (S.D.N.Y. July 29, 2022) (quoting U.S.S.G. § 1B1.13 App. n.1(A)). Defendant argues that the conditions at the facility where he is housed—at the time, FCI Ray Brook—put him at "extreme risk of infections"

6

with COVID-19 and/or Mpox. (Def. Mem. at 10-13.) Defendant further argues he is at greater risk of COVID-19 due to his underlying medical conditions, including hypertension, borderline diabetes, and respiratory issues from smoking cigarettes and marijuana. (*Id.* at 11.)

Since filing his compassionate release petition, Defendant has been relocated to Fort Dix, Federal Correctional Institution ("FCI Fort Dix"). As of September 20, 2024, the BOP's website indicates that there is only one active case amongst inmates at FCI Fort Dix. *See* Bureau of Prisons, "Inmate COVID-19 Data," available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited September 20, 2024). The Court of course recognizes that hypertension, diabetes, and smoking increases the risk of severe illness from COVID-19. *See* Centers for Disease Control and Prevention [hereinafter "CDC"], *People with Certain Medical Conditions and COVID-19 Risk Factors*, https://www.cdc.gov/covid/risk-factors/index.html (last visited September 20, 2024). However, as Defendant concedes, Defendant has refused to receive the COVID-19 vaccine. Courts have generally precluded inmates who refuse the COVID-19 vaccine from citing to their increased risk of infection to justify compassionate release. *United States v. Rivera-Banchs*, 668 F. Supp. 3d 163, 167 (W.D.N.Y. 2023) (collecting cases); *see also United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843-844 (D. Ariz. 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (collecting cases). Although Defendant indicates he refused the vaccine for religious reasons (Def. Mem. at 10; Def. Reply at 2-3), he fails to provide any detail or specificity with regards to either his beliefs or his reasons. Despite Defendant's arguments to the contrary, vaccines reduce the risk of death or serious illness from COVID-19. *See* CDC, *Benefits of Getting Vaccinated*,

https://www.cdc.gov/covid/vaccines/benefits.html (last visited September 20, 2024). Moreover, the claim that 55% of individuals have died from complications from the vaccines is unsupported.[3] Adverse events from the vaccines are rare. *See* CDC, *Safety of COVID-19 Vaccines*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html (last visited September 20, 2024).

Even those individuals who became infected after vaccination primarily experienced mild infections, and such "breakthrough cases" are rare. *See* NPR, *What the Latest Science Shows About Breakthrough Cases*, https://www.npr.org/sections/health-shots/2021/07/21/1018872469/worried-about-breakthrough-covid-cases-heres-what-to-know (last visited September 18, 2024). Finally, although Defendant indicates that he suffers from Long COVID[4] as a result of contracting COVID-19, he again fails to provide any details or specificity regarding his condition. Moreover, Defendant has presented no medical records to support this claim.

Finally, Defendant argues he suffers from PTSD from "COVID-related stress." (Def. Mem. at 2, 12.) In his reply, Defendant further states that he has PTSD from "from early childhood trauma." (Def. Reply at 3.) However, Defendant's medical records do not reflect mental health issues or that he suffers from PTSD. And Defendant again fails to provide any details or specificity regarding his mental health issues. Otherwise, Defendant's medical records indicate that his medical providers at FCI Ray Brook were addressing his medical needs, including prescribing him medication to treat his hypertension. (*See* Gov. Ex. 1 at 4-5, 8; Ex. 2 at 4-6, 8, 12-21, 24.)

---

[3] Defendant argues that "scientific studies reveal that over 55% of individuals who were vaccinated, have died from the complications of the Covid vaccine." (Def. Reply at 3.) Defendant, however, cites to none of these scientific studies.

[4] The CDC defines "Long COVID" as "a chronic condition that occurs after [COVID-19] infection and is present for at least 3 months. Long COVID includes a wide range of symptoms that may improve, worse, or be ongoing." Centers for Disease Control and Prevention, *Long COVID Basics*, https://www.cdc.gov/covid/long-term-effects/index html (last visited September 20, 2024).

While the Court acknowledges that COVID-19 has presented difficult conditions of confinement, the Court does not find that those conditions constitute "extraordinary and compelling" reasons warranting a reduction of Defendant's sentence.[5] "[T]he Court acknowledges that in most instances, a person is probably better off at liberty in the community during a pandemic, than incarcerated in a federal prison. That said, these harsher conditions of confinement are not unique to the defendant, *i.e.*, 'extraordinary' for purposes of § 3582(c)." *United States v. Ramirez*, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021) (citing *United States v. Bryant*, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (explaining that the severe conditions of confinement during the pandemic are "not unique to Mr. Bryant and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction")). "If the challenging conditions of confinement caused by the pandemic [standing alone] warranted a sentence reduction here, [then] essentially every inmate who has been [housed in the same facilities as Defendant] at any time since [October 2019] would be entitled to a sentence reduction." *Id.* at 47.

Accordingly, Defendant has failed to meet his burden to show that his increased risk of infection from COVID-19 and his mental health conditions constitute extraordinary and compelling reasons warranting a sentence reduction.

C.  *Family Circumstances*

Finally, Defendant seeks compassionate release based on the need to care for his disabled wife and two young children. An inmate's familial circumstances may constitute "extraordinary and compelling circumstances" sufficient to warrant a sentence reduction. These circumstances include caring for an incapacitated wife or minor children, where defendant is the only available

---

[5] Defendant attaches to his memorandum the Affidavit of Brie Williams, M.D., which advocates for the release from custody any defendant during the COVID-19 pandemic, provided that such release does not jeopardize public safety. (*See* Def. Ex. C ¶ 4.) The Court notes that the affidavit is dated March 27, 2020, at the height of the COVID-19 pandemic and prior to the availability of vaccines.

9

caretaker. *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) (citing U.S.S.G. § 1B1.13, cmt. n.1(C)(i)-(ii)). That said, Section 3582(c) "only authorizes release where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated." *United States of America, v. Scott Tucker & Timothy Muir*, No. 16-CR-91, 2024 WL 3983410, at *27 (S.D.N.Y. Aug. 29, 2024) (citation omitted).

Defendant argues that because he is the only available caregiver for his disabled wife and minor children, there exists an extraordinary and compelling reason for a sentence reduction. However, Defendant fails again to provide any detail, specificity, or evidence beyond a single conclusory statement. Defendant has not explained why no other family member or caretaker is available to care for his wife and children. Accordingly, Defendant has failed to meet his burden to demonstrate his family circumstances rise to the level of "extraordinary and compelling reasons" warranting a sentence reduction. *See United States v. Lindsey*, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("[C]ourts generally required a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established.") (citation omitted).

Having considered Defendant's arguments, the Court concludes that Defendant has failed to establish extraordinary and compelling reasons justifying a sentence reduction. Accordingly, it need not and does not address the § 3553(a) factors." *United States v. Laboy*, 511 F. Supp. 3d 436, 438 (W.D.N.Y. 2021).

10

**CONCLUSION**

For the foregoing reasons, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED without prejudice to renew. The Clerk of Court is directed to terminate the motion at ECF No. 100.

The Government is directed to mail a copy of this Order to *pro se* Defendant, Reg. No. 66742-019, at FCI Fort Dix, P.O. Box 2000, Joint Base MDL, NJ 08640 and to file proof of service on the docket on or before October 11, 2024.

Dated: September 20, 2024
       White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE